Here are the final case, Gray v. Maquat. May it please the court. Good morning, my name is Douglas Varga. I represent the appellants in this matter. This case is before this court on the entry of summary judgment against the plaintiffs in this case. It's an equal protection case, specifically involving zoning regulation and selective enforcement. I'd initially note that the equal protection clause requires state actors to treat all similarly situated persons in an equal and like manner. Tell me, it's in your papers and I think I know the answer, but exactly what was the specifically what acts are you complaining about in terms of singling out your clients as opposed to other people in the same business? What did they do? What did the defendants do? The defendants required my clients, required the plaintiffs in this case, to comply with zoning regulations. By just telling them they must or by sending police officers in What do you mean by required? The defendants in this case told my clients that if they wanted to operate a business as at least seven or eight other people in the town of Easton were doing, they had to come in and comply with a very expensive and onerous requirement. They were told that because they had been asked what they had to do. Is that right? Well, your honor, actually they were told that the town zoning enforcement officer was aware of their activities. He instructed them to go before the Planning and Zoning Commission, which my clients did. When they went in front of the Planning and Zoning Commission, they were told that they had to comply. Just so I'm clear following up on Judge Sachs' question this isn't a case, for example, where a citation was issued where a cease and desist letter was issued or any other official action in an effort to get compliance. Judge, there was no cease and desist. However, the local officials told my clients that they could not conduct the business in the town of Easton without complying with the law. They held up, they wanted a building permit to build a barn. They were told they could not get the building permit until they complied with section 7.4 of the regulation. I'm sorry, one last quick thing. Just following up. So on page 17 of your brief you say unqualifiedly that in October 2006 your clients, and I quote, were ordered to comply with section 7.4. What is the evidence that your clients were ordered to comply? Your honor, my clients went before the Planning and Zoning Commission which said you are engaged in activities which falls within this regulation and if you want to continue to engage in those activities you must comply with the regulation. And even at that initial hearing, your honor, there was a colloquy between my client and the zoning officials where the zoning officials acknowledged there were others in the community involved in the same use of the property. And there were representations made that they would need to comply with the same regulation. And we are here because my clients were the only ones who were made to comply with this regulation. The other horse operations were already in existence and already up and running, right? I believe that's correct, your honor. So your argument to us is really my clients were told as they were thinking about beginning and figuring out what they had to do in order to get into the business what they had to do to get a permit from the town. That is correct, your honor. And the town acknowledged, and there's some other folks out there and maybe they said something along the following lines and they ought to be complying too, but they were already fully in operation. I believe for the most part they were already fully in operation. Alright, so what you've got and I think what Judge Meyer took cognizance of is essentially people who were already doing what they were doing and the town was aware of them but they weren't enforcing the zoning laws and your clients who came before them, however they were told to get there, prior to them taking any steps and being told this is what you have to do if you want to come out with a working, compliant horse operation. Right? That's correct. Apples and oranges, right? Well, I disagree, your honor. My clients were told we know what you're doing and if you want to continue to engage in the same use of your property that other people in the town are engaging in Shovels in the dirt, as we say up home. Your honor, I think They were told that. Had they started building the barn? Yes, they had, your honor. They were already offering lessons and they were already starting to board horses in a nascent way. So, trust me, your honor, my clients were not proactively going to the town and saying are there any regulations we need to comply with because we'd like to spend a million dollars to start running a business. The zoning official told them that they had to go in front of the Planning and Zoning Commission and they did. They complied with that and they did everything they were told to do. And in a series of meetings, the Planning and Zoning Commission heard from my clients that they felt they were being discriminated against and singled out because there were others in the community. I think it's very important for this court to view something that the district court did not and that is that the town of Easton at all times knew of various violators of this regulation and did not enforce it against them. To be made clear, I don't think any of my colleagues I have no doubt that this is terribly unfair. Somebody comes in and wants to obey the law and they go through all kinds of things that cost them money and put them at a competitive disadvantage and so on and so forth. But just simply being put in an unequal position alone likely is not, only under very strict standards is that held to be a violation of the Constitution. I don't know why it comes to mind sitting here, but I see these bicyclists as I try to cross the street every morning. I see them roaring through every red light they can find. Supposing I come up with my bicycle and I'm riding along and one of these police stops me and says, do you know what you're doing? It's against the law. We're going to throw you in jail. If I see you do that one more time I'll just sit right here. So I'm the only one that's being not really enforced. I've been warned that it will be enforced. Do I have a cause of action against the city? Your Honor, I think that's different and here's why. And Judge Meyer adverted to this in his decision. He said he used an analogy of a bank robber being arrested and then complaining that the state's not out looking for other bank robbers. That's not the case here. The defendants knew that they made lists of people who were using their land in violation, including my client. They had my client on the list too. So they had them in the police lockup and the only one that they charged with a crime was my client. The others were let go. You're analogizing, right? I am analogizing, but I think it's a much better analogy than complaining that others are not being investigated or pursued. So it seems to me that what the real remedy is for all of this is... Let me back up and I withdraw what I just said. What you're asking us to say is that the town should also ignore its zoning regulations for your client, right? You're saying it should have at the time. We've got zoning regulations, but board, planning commission, whoever's enforcing these... I am rather confident that had my client had to go before the planning and zoning commission and they said we know we've got a bunch of people in town. We have this regulation. We don't enforce it. Go about your business. Don't worry about it. My clients would have been very happy to go about their business without having to comply like no one else was required to comply. But that's not what... What if the citizens of Easton, as they change and the kids grow up and are able to vote and all of those sorts of things, saying we're sick and tired of this sort of unequal enforcement of the zoning regs. And we know that there's some stuff out there that's not compliant. We're going to vote in a new town council or board of select persons or whatever the governance structure is and we're going to have those people or enough of them appoint a new zoning office administrator and we're going to instruct that zoning administrator to go find those people or tell them to take it down. Get a court order. Come in with a bulldozer and bulldoze their barns unless they are compliant. I mean basically that's the enforcement as to the other people because it's being enforced. Our concern here is that we were treated differently from other individuals in the town using their property in the same manner. There is legal precedent that supports this type of complaint of unequal enforcement of zoning laws or other... So what do you want as a remedy? Well, certainly from this court we would love to have a remand so that we could have a trial so that the defendants could explain to a jury. What are you ultimately looking for? What do your clients want as a remedy? They want the town to reimburse for the million bucks they spent on that? Yes, your honor. My clients are looking for damages for the money that they were required to spend that others were not required to spend. Can the town get out of this by saying to the non-compliant or business operators, thou shalt comply or you'll not to inordinately pun, but I think the horse has left the barn in that regard. My clients have already been... Horses always leave the barn but there are ways of getting them back in, I know, from personal experience. My clients have been damaged, Judge, because they had to spend money. They've been damaged only because the other people haven't had to spend money and have gotten away with it. That is one way to look at it as well because those people who were not required to spend the money obviously have a competitive advantage. The regulation we're talking about is a business regulation. Don't you also have, you have, Doremus sends two letters, two forceful letters to Han which led Tustian to direct her to vacate his property. That's absolutely correct. They also repeatedly investigated Carla Sharp. Isn't that correct? Sending her letters, summoning her before the commission and directing her to cease her horse-related businesses. They, following repeated prodding by the plaintiffs in this case, some action was taken. I would note, Your Honor, that those were... In December 2011 the commission sent a cease and desist letter to Brady, correct? That is correct. My client was in front of the commission originally where these issues were addressed in October of 2006 at which time the defendants already had prepared their lists of non-compliant properties. So while my client was spending money, my clients were spending money and spending their time and asking for equal enforcement of the law, the town did nothing until I would say December, I think it was December, June or December of 2010 when they finally started sending letters out. But I would submit to the court that some of the operators never received any letters at all and even those that received letters did not shut down the business. Your Honor mentioned this Sharp property. She's still in business despite the fact that the town had in its possession a copy of a lawsuit where she admitted that she ran a full boarding farm and it's obvious that she could not comply with the law because she could never possibly have 10 acres of land. So we are looking at this case as being one of unequal and unfair treatment. It was from day one mentioned by the town officials that there were comparator properties for want of a better word. There were other violators and representations were made by the defendants that they were going to do something about it so as not to disadvantage the plaintiffs in this case and granted with respect to a few of the properties things were done three or four years later but in the meantime my clients had to spend substantial time and money and they were injured because they were not treated the same as similarly situated property owners. Thanks, Your Honor. Good morning. May it please the court. Judges of the Court of Appeals, my name is Michael Ryan and I will be arguing this morning on behalf of the defendants. I think we've covered the matters very clearly in our brief unless there are questions, Your Honors, that you have I'm inclined to rely on the arguments. I do have a presentation I could go through it but I think it's very clear that the District Court did not err in granting summary judgment in favor of the defendants in this case. Is it your view that a town or locality could say, you know, we just don't have the money, we just don't have the resources to enforce our laws so if we choose to do nothing, that's fine. If we choose to direct our enforcement against some but not others who might be equally culpable of violating the law that's fine? Well, I think it would depend on the situation, Your Honor. You know, these things are pretty fact-intensive but for a class of one claim to exist there has to be intentional treatment. It's got to have been intent there must be proof that a person has been intentionally treated differently from others similarly situated with no rational basis in treatment and one of the things that towns do face is their budget constraints, their monetary restraints, their time constraints. The general statute in Connecticut gives substantial discretion to the zoning enforcement officers. Supposing it happened to these people, to your adversaries, clients, and it happened and they were the only person of their particular religion or ethnic background who were told this, would there be a cause of action for that under the equal protection? Because they were denied on the basis of race or religion. Exactly what happened here happened then except there's some indication or perhaps there's proof that the purpose of it was discrimination. I mean, they were doing what they were treating them differently because of an improper motive. Yes, I think that would be more evidence of a selective enforcement claim, Your Honor, the second crime that the plaintiffs are suing. Even there, there's no the problem here is there's no enforcement at all. It's just somebody comes to you and you say in your head, you say, gee, I don't like those people who look like foreigners. And then you say, yeah, yeah, you have to follow this and follow this and follow this, and you never say that. Yes, I don't think they can constitutionally do that. I think that might be a violation, Your Honor. But there's no indication of that? No indication of that whatsoever in this case. Is there any indication in the record on that point of sort of a temporal difference between the facilities that already existed when they came into being and the efforts made here by the Grays to construct, to comply and then construct their horse business? Yes, I think Your Honor is correct in that all the other establishments were up and running in establishment. The Grays came in initially in October of 2006 and they requested an informal meeting in which they wanted to discuss their plans. They were above board. They were as the district court said, ready and willing and they wanted to comply with the law. They discussed what it what they intended to do and they were told, well, here's the regulation and if you're going to if you're going to operate a commercial horse establishment or boarding or a riding academy you will have to comply with the regulation. So that was in October of 2006. I think it was prior to that that the other establishments were up and running. There is evidence as Your Honor has noted in the record of enforcement against Justine Hahn, the owner of that farm, as well as against Carla Sharp's cease and desist orders, follow up by the zoning enforcement officer. But as to the temporal nature, I think it is comparing apples and oranges, Your Honor. Thank you. Thank you. I would respectfully submit that We gather. Thank you. Your Honor, if I may just follow up on the resources issue. I would submit that at no time prior to before filing this lawsuit and taking depositions in this case was there any mention by the defendants that they somehow lacked resources to enforce this regulation against anyone other than my clients. I would note I mean they were told what they had to do so there really wasn't any enforcement necessary. This is a cease and desist, go take it down, seek an injunction in the court as far as other steps that have to be taken once somebody has plopped in the middle of town overnight a working horse operation without any consultation as the graze as your clients appropriately did. In the same token there's no evidence in the record that the zoning enforcement officer dropped in on any of the other property owners who were using their land. Yeah, I mean that's your one hook sort of here, I won't say you're one, you won't concede that you're one hook but that seems to me, I mean did he come in and say by the way you've got to comply? Correct, there's no evidence and there is evidence. Is the zoning officer is there any evidence in the record indicating whether he was the zoning officer when the other properties started to be prepared to be horse operation? For at least six or seven years, yes. And just so your Honor is aware. Those were built within those six or seven years or did they already exist? We know to the best of my recollection and I'm not even sure if it's in the record before this court, the zoning enforcement officer began working in maybe 2000, maybe even before that. Six years before. Correct. And he created these lists beginning months before my clients even came into the picture. In other words, six months before he told my client he had to go in before the zoning commission he had my client on a list along with six, seven, eight other non-compliant properties. Right, but the six, seven, eight other non-compliant properties were already built up and running. Yes, because they were on a list. They were all on a list as of March of 2006. Your client was the only one that was not built up and running. Your Honor, my client was on the same list at that time. But your client was the only person your clients were the only people on the list that were not built up and running. I don't think that's true because the list was investigatory in nature so the zoning enforcement officer was looking at potential violations at that time. So he was, despite the what we're hearing about a severe lack of resources, the zoning enforcement officer had enough time to drive around this town and look and see who had horses and therefore who might not be complying with the regulation. The record also includes periodic memoranda from the zoning commission asking the zoning enforcement officer to find out who's not in compliance because after all this is a health and safety regulation. It's to protect the joining property owners. So they were directing the zoning enforcement officer to find who may not be compliant, presumably for purposes of equal enforcement of the law. It's our position that that never came to pass. There is no other comparator in the record in this case who has come in prior to putting a shovel in the ground asking to do, asking to construct a horse operation who has been told, oh don't worry we don't have any there were two other properties that were grandfathered in. I don't believe the town had ever required anyone to comply with this particular zoning regulation. They weren't told that they didn't have to. There were no other applicants, just to amplify Judge Saksworth, there were no other applicants who came in as your clients did and were told, oh don't worry you don't have to do that. To my knowledge there is nothing in the record that ever indicated that anyone went in and was told don't worry about it you don't have to comply. All we know is that my clients were approached and told you're engaged in activities that must be regulated and you have to come in and talk to us so that we can tell you if you want to engage in that activity on your property you must be regulated and you must spend the money. Thank you. Thank you both for your arguments. The court will reserve decision. The final two cases are on submission. The clerk will adjourn court.